COUNTY OF LYON v. K. S. LIEN and Others.[1]

July 3, 1908.

Nos. 15,637—(117).

**Act Unconstitutional.**

Section 40 of chapter 448, Laws 1907, providing, in effect, that the owners of lands benefited by the construction of a new ditch and its connection with a ditch already constructed, for which their lands were not assessed, shall pay into the county treasury the same proportion of benefits received by their lands that the lands assessed for the original ditch were forced to pay, is unconstitutional, in that it deprives a class of land-

[1] Reported in 116 N. W. 1017.

owners of their property for a public purpose without any compensation and without due process of law.

Action in the district court for Lyon county to recover $2,965 for benefits conferred upon unassessed land by the construction of a ditch. From an order, Olsen, J., sustaining defendants' demurrer to the complaint, plaintiff appealed. Affirmed.

*N. J. Robinson,* for appellant.

*J. V. Mathews* and *Mathews & Lende,* for respondents.

START, C. J.

Appeal from an order of the district court of the county of Lyon sustaining the defendants' demurrer to the complaint herein.

The here material facts alleged in the complaint are to the effect following: The board of county commissioners of the plaintiff, the county of Lyon, duly established a public ditch known as "County Ditch No. 2," which runs through a part of the defendant town of Lucas, pursuant to the provisions of chapter 230, p. 303, Laws 1905. The ditch was constructed, and the cost thereof, $5,000, was paid by the plaintiff county and assessed upon the land benefited thereby. The plaintiff is charged with the repair of ditch No. 2. Thereafter and on August 5, 1907, the board of supervisors of the defendant town of Lucas, upon the petition of a part of the defendants for the benefit of all of them, established a town ditch, known as "Town Ditch No. 3," pursuant to the provisions of chapter 191, p. 215, Laws 1907. Town ditch No. 3, from a point named in its course, follows a well-defined watercourse to Lady Shoe lake, its terminus, where it connects with ditch No. 2. Thence its waters continue along the last-named ditch to its outlet, Cottonwood lake. Ditch No. 3 is so dug and constructed that a large volume of water flows through it from several thousand acres of low, wet, and swamp lands into ditch No. 2, thereby causing ditch No. 2 to become overflowed. None of the cost of establishing or constructing ditch No. 2 was assessed against the lands benefited or drained by ditch No. 3 into ditch No. 2. The defendant town of Lucas is benefited in the sum of $50 by the draining of one of its public highways by means of ditch No. 3 into ditch No. 2. The land of each of the other defendants, described in the complaint, is benefited by the draining of the waters there-

from by ditch No. 3 into ditch No. 2 in the several sums mentioned in the complaint. The complaint demanded judgment against all the defendants for a gross sum, being the same proportion of the alleged benefits received by the land of all of them that those originally assessed 'for ditch No. 2 were required to pay. The demurrer to the complaint was in these words: "The defendants, and each of them, in the above entitled action, demur to the complaint herein on the ground that it does not state the facts sufficient to constitute a cause of action."

It appears upon the face of the complaint that there was a misjoinder of several causes of action and of parties defendant; but the defendants waived it by their failure to demur on that ground.

Chapter 191, p. 215, Laws 1907, by virtue of which ditch No. 3 was constructed, is unconstitutional, and the board of supervisors had no authority to establish it. It is in fact simply a private enterprise. State v. Board of Suprs. of Town of Rockford, 102 Minn. 442, 114 N. W. 244. This ditch, however, according to the allegations of the complaint, was constructed for the benefit of the defendants, and the land of each of them is benefited by its construction and connection with county ditch No. 2. It is the contention of the plaintiff that such facts bring the case within the provisions of Laws 1907, p. 678, c. 448, § 40, which reads as follows:

> Whenever lands or public roads not assessed for the construction of a ditch established under this or any chapter, by which the cost of construction was assessed against the benefited property, or corporations are drained into said ditch by the construction of any open, tile, or other ditches, or by other excavations or works, the owners of said land and the public corporations benefited by the drainage of such public roads, shall pay into the treasury of the county charged with the repair of said ditch, the same proportion of the benefits received by said non-assessed lands or public roads that the lands and public roads originally assessed were forced to pay. Said amount, if not paid, can be recovered by the county charged with the repair of said ditch, in a civil action. All moneys received by the county under the provisions of this section shall be placed in the general ditch fund of the county.

Conceding, only for the purpose of a decision of this appeal, that the allegations of the complaint are sufficient to bring this case within the letter of the statute we have quoted, we are called upon to determine whether the statute is constitutional. It is the contention of the defendants that the statute deprives landowners, whose lands were not benefited by a ditch when established and constructed and were not assessed therefor, but were thereafter drained into the ditch, of their property without due process of law, and, further, that it takes their property for public use without just compensation therefor, in violation of sections 7 and 13 of article 1 of our state constitution. It is urged by counsel for the plaintiff that the intention of the statute is that the owners of all lands and public roads, not assessed for the construction of a public ditch, if thereafter drained into it and benefited thereby, shall pay into the county treasury the same proportion of benefits as the owners of lands originally assessed for the construction of the ditch were obliged to pay; that the fund resulting from the money so collected and paid into the county treasury is to be used for the repair, alteration, and enlargement of the original ditch, as may become necessary from time to time; and, further, that the statute, so construed, is constitutional.

If, after a public ditch has been constructed and the entire cost thereof assessed upon all lands benefited thereby, another ditch be constructed so that it discharges its waters into the original ditch, whereby the cost of keeping it in repair and of enlarging it when necessary is increased, it is obvious that the lands benefited by the new ditch should be assessed for their just and proportionate share of the cost of maintaining the original ditch. Therefore a statute would be valid which prescribed the terms and conditions upon which a new ditch might be connected with an existing one, and provided a practical scheme for ascertaining the benefits to the lands not assessed by connecting the new ditch with the main or original one and assessing such lands for their fair proportion of the cost of maintaining the original ditch in a condition to carry away all waters coming into it. The equity of requiring such lands to bear their equitable share of such cost has led to the enactment of laws in other states providing for the enforcement of the equity. See Burns' Ann. St. Ind. 1901, §§ 5735, 5736.

It is quite probable that the legislature, in enacting the section of the statute here in question, recognized the equity to which we have referred and intended to provide the means of enforcing it. However this may be, it is clear from the language of the section that it does not provide for an equitable assessment of lands benefited by the connection of the ditch which drains them with another and independent ditch, but that it does provide for the taking of the property of a certain class of landowners for public use without just compensation, and deprives them of their property without due process of law.

This statute does not provide any means for ascertaining the benefits to the lands drained by the new ditch by its connection with the original ditch and for the levying of a just assessment therefor, which the landowners can pay without litigation. On the contrary, it arbitrarily provides that such owners shall pay into the treasury of the county the same proportion of the benefits received by their lands that the lands assessed for the original ditch were forced to pay; that is, the cost of establishing and constructing the original ditch and the benefits accruing therefrom to the lands assessed for its construction, matters as to which landowners benefited by the new ditch have neither notice nor opportunity to be heard, are made, by the statute, the basis of an inflexible rule for determining the amount the owners of lands benefited by the new ditch must pay if it is connected with the original ditch.

Again, this arbitrary and irrelevant rule does not take into account the cost of establishing and constructing the new ditch, but requires the owners of lands benefited thereby to pay a percentage of the entire benefits conferred by the new ditch, the percentage to be determined by the ratio of the cost of construction of the original ditch to the benefits accruing to the lands assessed for its construction. It is apparent that the benefits to the lands drained by the new ditch by connecting it with the original ditch could not in any case exceed the difference between the amount of the entire benefits to the land drained by the new ditch and the cost of its construction to a connection with the original ditch. It is also to be noted that this statute makes no provision for the application of the money, collected from the landowners benefited by the construction of the new ditch and con-

necting it with the original ditch, to the repair of either of the ditches. It simply provides that it shall be placed in the general ditch fund of the county.

It follows that the enforcement of the provisions of this statute would result necessarily in arbitrarily depriving a class of landowners of their property without due process of law and appropriating it to the public use without any compensation therefor. To illustrate: If, in a given case, the cost of constructing each ditch is seventy five per cent. of the benefits conferred by each, then the owners of lands benefited by each must pay seventy five per cent. of the benefits received, but those who are benefited by the new ditch must also pay another seventy five per cent. into the public treasury, for some purpose not clearly defined, whereby they are deprived of their property, without any compensation and without due process of law, to the extent of fifty per cent. of the increased value of their lands resulting from the construction of the new ditch and connecting it with the original ditch. We hold the statute unconstitutional for the reasons stated.

To prevent any misunderstanding of the scope of this decision, we deem it proper to state that the other provisions of Laws 1907, p. 641, c. 448, are in no manner dependent upon section 40, which we hold to be invalid; hence they are not affected by this decision.

Order affirmed.