WILLIAM R. THOMSON, DEFENDANT IN ERROR, v. CENTRAL PASSENGER RAILWAY COMPANY, PLAINTIFF IN ERROR.

Argued June 30, 1910—Decided November 14, 1910.

1. A corporation is not bound by an unauthorized agreement made by its president outside of the scope of his express or implied authority and not in the course of its ordinary business which it, through its directors, has neither ratified, acquiesced in or knowingly profited by.
2. The rule that knowledge not acquired by an agent while acting for his principal will be imputed to the latter is a legal fiction by which rights or liabilities are sometimes determined; it is never a rule of evidence by which the knowledge of the principal in point of fact can be established.

---

On error to the Supreme Court.

The judgment recovered by the plaintiff in the Circuit Court was removed by writ of error to the Supreme Court, where it was reversed for the reason given in the following *per curiam* opinion:

"This action was brought by Thomson to recover damages for the breach of a contract under seal, alleged to have been made by the defendant company to one Albert M. Jordan. It appears from the proofs that at the time of the making of this contract there were a number of suits pending against the defendant company, the effect of which was to interfere with the construction of their railroad. For the purpose of bringing these litigations to an end the agreement in ques-

JUNE TERM, 1910.　　　329

*51 Vroom.*　　　Thomson v. Central Pass. Railway Co.

tion was made, and by its terms the company agreed to pay Jordan $10,000 in cash, or in its first mortgage bonds, if Jordan should bring about a discontinuance of them. The suits were discontinued. Jordan subsequently assigned the agreement, and his rights under it, to one Sweigard, and the latter in turn assigned the agreement, and the rights of Jordan thereunder, to the present plaintiff. The result of the trial was a verdict and judgment in favor of Thomson.

"Numerous errors are assigned and argued by counsel before us. It is only necessary, however, to consider one of them, and that is the refusal to nonsuit or direct a verdict. In order to entitle the plaintiff to recover, the burden rested upon him to show that the suits which have been referred to were brought to a conclusion through the efforts of Jordan, for, unless this was so, neither Jordan, nor those claiming under him, are entitled to the compensation called for by the agreement. We have examined the proofs carefully for the purpose of determining whether any evidence of this kind was submitted to the trial court and jury, and find absolutely none. The plaintiff having failed to show performance of the contract by Jordan, the motion to nonsuit or direct a verdict should have prevailed.

"The judgment under review will be reversed."

For the plaintiff in error, *Eli H. Chandler* and *Bourgeois & Sooy.*

For the defendant in error, *Thompson & Cole.*

The opinion of the court was delivered by

GARRISON, J. The Supreme Court reversed the judgment of the Circuit Court upon the single ground that the plaintiff had adduced no testimony from which the jury could legitimately find that the suits against the defendant had been dismissed through the efforts of Jordan. We are not willing to say that a verdict ought to have been directed on this ground, and hence find it unnecessary to pass upon the question whether under the terms of the contract set up in the declara-

330    COURT OF ERRORS AND APPEALS.

Thomson v. Central Pass. Railway Co.    *80 N. J. L.*

tion, the burden was upon the plaintiff to show that Jordan had performed his contract, or upon the defendant to show that he had not.

There was, however, another ground advanced by the defendant upon which we think that a verdict ought to have been directed, viz., that "the undisputed evidence shows that the agreement is not the agreement of the company either by direct authorization or by any ratification thereof."

The agreement that was the basis of the action was of a peculiar character and not in the ordinary course of the defendant's business. It provided, first, that the defendant, the Central Passenger Railway Company, would deliver to Albert M. Jordan the sum of $10,000 in par value of the bonds of the company, to be secured by a mortgage to be created upon its properties; secondly, that the company acknowledged itself to be indebted to said Jordan in said sum to be paid to him in case the mortgage and bonds were not created within one year, and, thirdly, that Jordan should cause certain suits by various parties against the defendant to be dismissed or withdrawn, or, in the event of his inability so to do, he would return such bonds and surrender this contract.

Obviously such an agreement, in order to bind the corporation, must be its act either by its corporate action or by its ratification or acquiescence, or because made by its authorized agent. In point of fact the agreement was made by the president in the name of the corporation, but without its authority or the knowledge of its other directors, who not only never heard of the agreement, either before or after it was made, but did not even know of the existence of the suits to which it referred or of their dismissal at a later period.

The lack of authority in the president is clear, and the lack of knowledge on the part of the directors eliminates the element of ratification, while their ignorance that any benefit had been received by their corporation bars the application of the doctrine of acquiescence illustrated by such cases as *McElroy* v. *Minn. Horse Co.*, 96 *Wis.* 317, and *The Bank* v. *Mining Co.*, 89 *Fed. Rep.* 439. The trial judge was there-

fore quite right in telling the jury that there was no testimony in the case to justify the assumption that the directors of the corporation with knowledge assented to such contract. When, however, he refused a direction and submitted the case to the jury upon the theory of the imputation of knowledge to the directors he fell into legal error. This is what he said in his charge:

"I find no testimony in this case which seems to me to justify an assumption that the directors of the corporation with knowledge assented to that contract unless it be through the knowledge of their counsel imputed to them by law, and I charge you that if you find that counsel of defendant company had knowledge of the agreement of June 28th, 1904, and of its contents at the time the defendant company commenced work on Virginia avenue, and that after such knowledge by said counsel and commencement of work, defendant's counsel filed or caused to be filed the rules to discontinue the suits then pending in the various courts, and that the employment of defendant's counsel was with respect to the various suits mentioned in said agreement, then and in that event knowledge of defendant's counsel was knowledge to the defendant corporation." And, "I charge you further: If defendant had knowledge of the agreement of June 28th, 1904, through their counsel as aforesaid, and did not within a reasonable time thereafter, disaffirm said agreement, it would amount in law to a ratification of the agreement."

Applying this instruction to the facts that might legitimately be found from the testimony, it authorized the jury to impute to the corporation the knowledge of the agreement possessed by the legal counsel to whom the president had imparted such information. The instruction therefore amounted to this—that the information possessed by the president did not bind the corporation, but if he imparted such information to the legal counsel of the company then the information so imparted became binding upon the corporation.

The fallacy of such a rule by which imparted information is made to rise higher than its source is apparent. It is apparent, also, that the information thus imparted was under

such state of facts not acquired by counsel while acting for the corporation. The fundamental error, therefore, in the application of the rule of imputed knowledge to the question of ratification by the corporation was that it treated such rule as if the fact of knowledge by the directors was thereby established, whereas such rule, as was pointed out in *Vulcan Detinning Co.* v. *American Can Co.,* 2 *Buch.* 387, deals only with the fiction of knowledge and "is never a rule of evidence by which the actual possession of knowledge by the principal can, in point of fact, be established." The fiction of knowledge in a proper case carries with it its own burden of liability, but knowledge as a fact is the basis of implied acquiescence or ratification.

Under the instructions given to the jury the judgment recovered by the plaintiff must, upon error, be deemed to rest upon a ratification by the directors of an unauthorized agreement of which they had never heard, the sole ground of such ratification being that the agent, who, without authority had made such agreement, availed himself in its execution of the services of the counsel of the company, who as far as the case shows was himself entirely ignorant that the transaction was without the authority of the corporation or the knowledge of its other directors.

Exception was allowed to the judge's charge in this respect and error duly assigned thereon in the Supreme Court. It is immaterial, however, whether the matter be considered upon such exception or under the motion for a direction, since equally, and in either case, it points to a judicial error at the trial injurious to the plaintiff in error. We reach, therefore, the same result as that reached by the Supreme Court but for a different reason and upon a different ground.

The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, VROOM, DILL, CONGDON, JJ. 11.

*For reversal*—None.